**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID ROGERS, ALTHEA DEMPS, RUSSELL SPALDING, MARK FRANKLIN, and CARLINE DUNLAP,[1] | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 12 C 7220 |
| v. | ) ) | Judge Joan B. Gottschall |
| FORD MOTOR COMPANY, Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs David Rogers, Althea Demps, Russell Spalding, and Mark Franklin contend that their employer, Ford Motor Company, discriminated against them based on their race (African American) and retaliated against them after their co-worker, Carline Dunlap, filed an EEOC charge on behalf of herself and "a class of Black employees." Amended Complaint, Ex. 1 (EEOC Charge), Dkt. 27-1. After Ford filed a motion to dismiss the original complaint, the plaintiffs amended their complaint to, among other things, add Dunlap as a plaintiff.

Ford seeks to dismiss portions of the amended complaint, arguing that the original plaintiffs may not use Dunlap's EEOC charge to excuse their failure to file their own EEOC charges. Alternatively, it contends that even if the original plaintiffs can rely on Dunlap's EEOC charge, their retaliation and hostile work environment claims are outside the scope of that charge. Finally, it contends that even if its other arguments are rejected, the amended complaint should nevertheless be dismissed as factually insufficient or, alternatively, the plaintiffs should

---

[1] The parties' briefs and the underlying EEOC charge inconsistently refer to both Carline and Caroline Dunlap. The court adopts the "Carline" spelling used in the caption and text of the first amended complaint.

be required to submit a more definite statement. For the following reasons, Ford's motion is denied in its entirety.

## I. BACKGROUND

The following facts are drawn from the amended complaint and are accepted as true for purposes of Ford's motion to dismiss.

### A.   The Plaintiffs' Employment at Ford

Rogers, Demps, Spalding, Franklin, and Dunlap are African-American employees and have worked at Ford since at least 2008. Between 2008 and 2010, all of the plaintiffs worked in the material handling department except Dunlap, who worked in the material handling department from 2008 to April 2009, when she was transferred to the trim department.

In August of 2008, Dunlap filed an EEOC charge on behalf of herself and "a class of Black employees" contending they did not receive equal opportunities to work overtime hours in the material handling department compared to Ford's non-African American employees. The charge states:

> I was hired by Respondent in April of 1995. My current position is in Industrial Lift. Since at least February 1, 2008, I and a class of black employees have been subjected to different terms and conditions with regards to overtime, compensation during breaks and lunch, discipline and promotions.
>
> I believe I and a class of Black employees have been discriminated against because of our race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Am. Compl., Ex. A (Dkt. 27-1). Dunlap was the only named party in the EEOC charge because EEOC staff told the plaintiffs that only a single named party was necessary to file a claim on behalf of a class.

Ford management personnel were aware of the EEOC charge. Following the filing of the charge, the plaintiffs experienced retaliation and a hostile work environment. An unidentified person hung a noose at their work station, their "supervisors [stood] close to [them] while they worked, staring at them in a hostile manner[,] thereby intimidating them," similarly situated non-African American employees were treated more favorably or not disciplined for "infractions for which [the p]laintiffs were accused," and they were overloaded "with work assignments too great for any one individual employee" while similarly situated non-African American employees were given appropriate work assignments. *Id*. at ¶ 20. In addition, Ford retaliated against Dunlap by transferring her from a position operating equipment in the material handling department to the trim department, in contravention of a 2006 settlement agreement. Finally, Ford retaliated against all of the plaintiffs by denying them the opportunity to work overtime.

**B.     The Plaintiffs' Federal Complaint**

On September 10, 2012, Rogers, Demps, Spalding, and Franklin filed a two-count complaint alleging that Ford discriminated against them based on their race and created a hostile work environment to retaliate against them for filing an EEOC charge, in violation of Title VII, 42 U.S.C. § 2000(e)(2)(a)(1), and the Civil Rights Act of 1871, 42 U.S.C. § 1981. In their complaint, the plaintiffs allege that Dunlap had her own attorney and that they believed that Dunlap had received a right to sue letter but the EEOC was communicating exclusively with Dunlap about the charge.

The EEOC issued a right to sue letter on September 19, 2012, stating that it found reasonable cause to believe that "violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent." *Id*.

at Ex. B. The letter was directed to Dunlap and did not refer to the class claim in the EEOC charge.

Ford moved to dismiss the complaint. The court permitted the plaintiffs to file an amended complaint that added Dunlap as a plaintiff, expanded the complaint's factual allegations, and added a third count alleging Ford breached a prior settlement agreement with Dunlap. Ford's motion to dismiss the amended complaint or, in the alternative, for a more definite statement, is presently before the court.

## II. ANALYSIS

Ford contends that the claims brought by the four original plaintiffs (Rogers, Demps, Spalding, and Franklin) should be dismissed for failure to exhaust administrative remedies, as the four plaintiffs did not file their own EEOC charges or receive their own right to sue letters. In its first fallback argument, Ford asserts that even if the four original plaintiffs can rely on Dunlap's EEOC charge, their claims are outside the scope of that charge. In its second fallback argument, Ford argues that even if the plaintiffs' claims are properly before the court, Counts I (Title VII) and II (§ 1981) fail to state a claim for which relief may be granted. In its third fallback argument, Ford asks the court to order the plaintiffs to provide a more definite statement.

### A. Motion to Dismiss

#### 1. Legal Standard

For purposes of a motion to dismiss, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiffs' favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this

presumption of truth.  *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).  A motion to dismiss should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Finally, "a plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts."  *Jackson v. Marion Cnty.*, 66 F.3d 151, 153 (7th Cir. 1995).

      **2.**     **Failure to Exhaust**

The court first considers whether to dismiss the four original plaintiffs' claims because they neither filed their own EEOC charges nor received their own right to sue letters and instead, are relying on Dunlap's charge and right to sue letter and the EEOC's representation that Dunlap's charge was sufficient.  As a general rule, the filing of an EEOC charge and the receipt of a right to sue letter are prerequisites to the filing of a federal suit based on Title VII.  42 U.S.C. § 2000e–5(e).  These requirements allow the EEOC to investigate the charge and encourage the complainant and the employer to resolve their dispute using the EEOC's conciliation services.  *See Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006).

The rule, however, is not absolute.  The "single-filing" doctrine (also known as the "piggybacking" doctrine), allows an individual to join a lawsuit filed by another individual who exhausted his or her administrative remedies.  *See Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003); *see also Scott v. Onyx Waste Servs. Midwest, Inc.*, No. 10 C 3427, 2011 WL 3651277, at *2 (N.D. Ill. Aug. 18, 2011) (collecting cases).  A plaintiff may piggyback when his "claim arises out of the same or similar discriminatory conduct, committed in the same period, as the claim in the suit in which he wants to intervene" and

another individual exhausted her administrative remedies and noted the collective nature of her discrimination claim in her EEOC charge. *See Horton*, 343 F.3d at 899; *see also McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 905 (N.D. Ill. 2011).

Ford argues that the exception is inapplicable here because: (1) the four original plaintiffs did not sufficiently plead that they experienced discrimination arising out of the same unlawful conduct alleged in Dunlap's charge; (2) piggybacking should not be available for a small five-person class as five people could have easily filed their own charges without burdening the EEOC, and the doctrine was meant to prevent the EEOC or defendants from drowning in large numbers of claims; and (3) the EEOC's representation that Dunlap's charge was sufficient does not excuse the four original plaintiffs from the requirement that they each file a charge. The court is not persuaded.

First, the only fair reading of the amended complaint is that all five plaintiffs were victims of the same alleged discrimination. A noose was hung at their collective work station, supervisors employed the same hostile body language, they were treated differently than similarly situated non-African American employees when they committed the same types of infractions, and they were all given excessive work assignments while similarly situated non-African American employees were given appropriate work assignments. The plaintiffs also contend that Ford denied overtime based solely on the plaintiffs' race, without consideration of any other factors. These allegations "state a claim to relief that is plausible on its face" and is based on the same underlying facts. *See Ashcroft*, 556 U.S. at 678.

Second, the court rejects Ford's contention that a five-person class is too small to be eligible for piggybacking. The Seventh Circuit has criticized the application of the doctrine to a

two-person class since two separate EEOC charges are easy to manage. *Horton*, 343 F.3d at 899-900. Nevertheless, it expressly held that the doctrine could "embrace *some* two-complainant cases." *Id*. at 900 (emphasis in original). Given this authority, the court rejects Ford's invitation to find that a class of five is too small to piggyback as a matter of law. Given the court's holding that piggybacking is available, the four original plaintiffs may rely on Dunlap's charge and right to sue letter, and the court need not reach their claim that the EEOC's representation that a single charge was proper excused them from filing their own separate EEOC charges.

### 3. Scope of the Charge

Ford next contends that even if piggybacking applies, the four original plaintiffs' hostile work environment and retaliation claims should be dismissed as they are outside the scope of Dunlap's EEOC charge, which asserted a claim of race-based discrimination. "A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). To determine if the allegations "fall within the scope of the earlier charges, the court looks at whether they are 'like or reasonably related to' those contained in the EEOC complaint." *Id*. If so, "the court then asks whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it." *Id*. To satisfy this standard, a plaintiff must allege that the new claim and the EEOC charge "describe the same conduct and implicate the same individuals." *Cheek*, 31 F.3d at 201.

Turning first to the plaintiffs' hostile work environment claim, Dunlap's charge stated that "[s]ince at least February 1, 2008, I and a class of black employees [were] subjected to different terms and conditions with regards to overtime, compensation during breaks and lunch,

discipline and promotions." Am. Compl., Ex. A (Dkt. 27-1). The clear gist of the plaintiffs' complaint is that they experienced discrimination, as specified in the charge, as a group at the hands of the same set of supervisors. Based on the present record, the court finds that the types of discrimination listed in the charge could support a hostile work environment claim. In addition, the hostile work environment claim reasonably could have developed from the EEOC's investigation of the charges before it. *See Cheek*, 31 F.3d at 201. Thus, Ford's motion to dismiss the plaintiffs' hostile work environment claim as outside the scope of Dunlap's charge is denied.

Ford next argues that the plaintiffs' retaliation claim is outside the scope of Dunlap's charge. The parties agree that if retaliation allegedly occurs after a charge is filed, it is proper even if retaliation is not raised before the EEOC. *See, e.g.*, *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996). Ford, however, contends this exception to exhaustion is inapplicable because it exists to obviate the need to file duplicative EEOC charges. Ford reasons that because the plaintiffs piggybacked on Dunlap's discrimination claim, they could and should have filed separate retaliation claims as there was nothing to duplicate since there was no underlying discrimination charge. Ford does not cite to any authority holding that other similarly situated plaintiffs may not piggyback on a lead plaintiff's retaliation claim. The court thus declines to create the rule suggested by Ford out of whole cloth.

### 4. The Plaintiffs' § 1981 and Title VII Claims

In Counts I and II, respectively, the plaintiffs allege that Ford violated their rights under § 1981 (Count I) and Title VII (Count II) by discriminating and retaliating against them. Section 1981 proscribes discrimination based on race and ethnicity in the "making, performance,

modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b).  To establish a claim of discrimination under § 1981, the plaintiffs must allege:  (1) they are members of a racial minority; (2) Ford intended to discriminate on the basis of race; and (3) the discrimination concerned the making and enforcing of a contract.  *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

With respect to their Title VII claim, the plaintiffs appear to be seeking to proceed under the indirect method.  To assert a prima facie case under that method, they must allege:  (1) they are members of a protected class; (2) their performance met Ford's legitimate expectations; (3) despite this performance, they were subjected to an adverse employment action; and (4) Ford treated similarly situated employees outside of the protected class more favorably.  *See Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 554 (7th Cir. 2011).

Retaliation claims under § 1981 and Title VII are governed by the same standard.  *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).  Again, the plaintiffs appear to be relying on the indirect method.  Thus, to state a prima facie case, they must allege: (1) they engaged in statutorily protected activity; (2) suffered a materially adverse employment action; (3) were satisfactorily performing their jobs; and (4) were treated less favorably than similarly situated employees who did not complain about discrimination.  *Id*. at 786-87.

Ford contends that the plaintiffs "vaguely allege discrimination in connection with the availability of overtime without delineating in any fashion how the overtime was allocated[,] how the alleged unequal availability harmed them[,] or the number of instances allegedly involved."  Ford's Reply at 6 (Dkt. 35) (internal quotations omitted).  Ford also acknowledges

that the plaintiffs make "general allegations" about discrimination but contends these allegations are insufficient because the plaintiffs do not specify whether they all were victims of each instance of alleged discrimination, which supervisors were involved, or when and how often the alleged discrimination occurred.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Our system operates on a notice pleading standard; *Twombly* and its progeny do not change this fact." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). As noted above, Ford argues that the amended complaint's factual allegations could be more detailed. This may be true, but is not the relevant standard. As the plaintiffs have sufficiently alleged that they, as a group, all experienced the same allegedly discriminatory and retaliatory acts, the amended complaint states plausible claims for discrimination and retaliation under § 1981 and Title VII. Thus, Ford's motion to dismiss is denied. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 988 (7th Cir. 2012) ("after *Twombly* and *Iqbal*, a plaintiff must plead facts that suggest a right to relief beyond the speculative level.").

**B.  Ford's Motion for a More Definite Statement**

This brings the court to Ford's final argument: the plaintiffs should be required to provide a more definite statement as the amended complaint is unreasonably vague and ambiguous. Federal Rule of Civil Procedure 12(e) provides that, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) "is designed to strike at unintelligibility rather than want of detail," *Flentye v. Kathrein*,

485 F. Supp. 2d 903, 911 (N.D. Ill. 2007) (internal quotations omitted), and is intended to eliminate confusion, not replace discovery, *Direct Commc'ns, Inc. v. Horizon Retail Const., Inc.*, 387 F. Supp. 2d 828, 831 (N.D. Ill. 2005).

While the amended complaint is not larded with minute details, it sets out an understandable description of the alleged retaliation and discrimination allegedly suffered by the plaintiffs. It is, therefore, not "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Land O'Lakes Purina Feed, LLC v. WelkCo, LLC*, No. CIV-10-981-GPM, 2011 WL 1465632, at *2 (S.D. Ill. Apr. 18, 2011) (internal quotations and citations omitted). Accordingly, Ford's motion for a more definite statement is denied.

### III. CONCLUSION

Ford's motion to dismiss or, in the alternative, for a more definite statement [Dkt. 29] is denied in its entirety.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 26, 2013