THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID ROGERS, <br> ALTHEA DEMPS, <br> RUSSELL SPALDING, <br> MARK FRANKLIN, <br> CARLINE DUNLAP, <br><br> Plaintiffs, <br><br> v. <br><br> FORD MOTOR COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No.: 1:12-cv-07220 <br><br> JUDGE GOTTSCHALL <br><br> MAGISTRATE WEISMAN |

**DEFENDANT FORD MOTOR COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to F.R.C.P. 56 and L.R. 56.1(a)(2), Defendant Ford Motor Company ("Ford") submits this Memorandum of Law in Support of its Motion for Summary Judgment on the claims asserted by Plaintiff David Rogers ("Rogers") in his First Amended Complaint ("FAC"). For the reasons set forth below, there are no genuine issues of material fact, and Ford is entitled to summary judgment.

**I.    INTRODUCTION**

Rogers is an hourly employee at Ford's Chicago Assembly Plant (the "Plant" or "CAP"). While working as an Industrial Lift Truck Operator ("ILTO"), Rogers claims he was discriminated against by being denied overtime because of his race. Rogers also claims that Ford

allegedly retaliated against him by loading him with more work, closely watching him work, and leaving a rope allegedly in the shape of a noose near his loading dock.[1]

Judgment should be granted for Ford on all of Rogers' claims because he cannot establish a prima facie case as to any alleged cause of action. With respect to his overtime claims, Rogers has no evidence as to specifically when or how often he was allegedly denied overtime. [SOF 23- Tab 1, Rogers Dep. 56:18 to 57:2, SOF 35- Tab 1, Rogers Dep. 70:6-10, SOF 38- Tab 1, Rogers Dep. 77:14-17]  Rogers also admits he turned down overtime opportunities. [SOF 42-Tab 1, Rogers Dep. 105:11-13]  And, even if Rogers could identify specific instances in which he was wrongfully denied overtime (which he cannot), Rogers lacks sufficient evidence of any purported discriminatory motive.  Thus, Rogers' race discrimination claims are without merit.

With respect to alleged retaliation, Rogers' claim fails because courts refuse to consider "mean glances," staring and the like from other employees or even supervisors to be material adverse actions, especially when Rogers admits Ford never disciplined him. [SOF 19- Tab 1, Rogers Dep. 155:18 to 156:3, SOFs 53-54-Tab 1, Rogers Dep. 155:18 to 156:3; 158:21 to 159:23.] As to the rope allegation, there is conflicting evidence about whether the rope was even in the shape of a "noose," and if anything, the facts uncovered about the alleged noose failed to show any intentional, malicious act by Ford personnel.  [SOF 61-Tab 1, Rogers Dep. 124:24 to 125:19, SOF 64-Tab 4, Decl. Christina Peace, ¶3, and attachment; Tab 5, Dahringer Dep. 40:10 to 42:13]

---

[1] Though Rogers never called the hotline to complain about discrimination, never brought a grievance nor brought his own EEOC charge [SOF 44-Tab 1, Rogers Dep. 112:6-15; SOF 45-Tab 1, Rogers Dep. 61:23 to 62:8, and 82:9-12; SOF 50-Tab 1, Rogers Dep. 143:24 to 144:15, 145:2-8, 146:21 to 147:3; SOF 55-Tab 1, Rogers Dep. 163:3-12], Rogers claims that Ford retaliated against him after another employee filed an EEOC Charge concerning overtime. (Doc. 27-1; Doc. 27, para. 20)  On the other hand, Rogers did file a charge with the Chicago Commission on Human Rights ("CCHR") about overtime claims. [SOF 49-Tab 1, Rogers Dep. 95:7-24; Tab 1B, Rogers Dep. Ex. 9]

Indeed, Rogers' testified that he did not know who put the alleged item in his work area or why. [SOF 59-Tab 1, Rogers Dep. 120:23-121:11; SOF 60-Tab 1, Rogers Dep. 123:7-13]

Ultimately, Rogers has no evidence, other than his personal opinion, that Ford took any adverse action against him because of his administrative charge. [SOF 56-Tab 1, Rogers Dep. 220:5-18] For these and the reasons set forth herein, Ford is entitled to summary judgment on all claims.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Summary judgment should be entered in favor of the defendant when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party must set forth specific facts demonstrating a genuine issue for trial, however, and must "produce more than a scintilla of evidence in support of its position." *Conley v. Village of Bed-ford Park*, 215 F.3d 703, 709 (7th Cir. 2000). "[B]are allegations not supported by specific facts are not sufficient in opposing a motion for summary judgment." *Hildebrandt v. Ill. Dep't. of Natural Res.,* 347 F.3d 1014, 1036 (7th Cir. 2003), quoting *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989); see *also Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003) ("Conclusory allegations, unsupported by specific facts, will not suffice.").

## III.     LEGAL ARGUMENT

Rogers brings race discrimination and retaliation claims against Ford under Title VII and 42 U.S.C. section 1981. (Doc. 27)  The Seventh Circuit recently confirmed that in analyzing such claims, the ultimate question is: "does the record contain sufficient evidence to permit a

reasonable fact finder to conclude that a discriminatory motive caused the adverse action?" *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). The substantive standards and methods of proof for Title VII claims also apply to section 1981 claims. *Liu v. Cook County*, 817 F.3d 307, 315 (7th Cir. 2016). As shown here, Rogers' claims fail as a matter of law.

      A.    **Rogers' Race Discrimination Claim Fails Because He Lacks Evidence to Establish a Prima Facie Case**

The Seventh Circuit has indicated a trend away from the "direct" or "indirect" methods of proof in analyzing discrimination (and retaliation) claims. *Liu*, 817 F.3d 307, 315 ("it is a mistake to adhere too rigidly to those methods [the direct or indirect method of proof]"). However, the Seventh Circuit still employs burden shifting to analyze whether discrimination or retaliation occurred. *See Lord*, 839 F.3d at 564; *see also Liu,* 817 F.3d at 315-16 (discussing and applying burden shifting analysis to discrimination claim). Thus, only if a plaintiff first establishes a prima facie case of discrimination or retaliation does the burden shift to the employer to articulate a non-discriminatory reason for its action. If such non-discriminatory reason is established, then the burden shifts back to the employee to show the "employer's stated nondiscriminatory reason was a lie intended to mask unlawful discrimination." *Liu*, 817 F.3d at 315-16; see also *Lord*, 839 F.3d at 564 (indicating analysis for retaliation claim involves initial proof of retaliatory motive, then legitimate business reason, then pretext). The proper question at summary judgment is whether a reasonable jury could find discrimination. *Liu*, 817 F.3d at 316.

      i.    *Rogers cannot identify specific instances when he was denied overtime*

Rogers claims Ford wrongfully denied him overtime because of his race. (Doc. #27, ¶¶ 18, 35). Rogers admitted, however, he cannot identify specific instances of *when* he was wrongfully denied such overtime. [SOF 23-Tab 1, Rogers Dep. 56:18 to 57:2; SOF 35-Tab 1,

4

Rogers Dep. 70:6-10; SOF 38, Tab 1, Rogers Dep. 77:14-17] Because Rogers cannot identify specific instances of ever being denied overtime, he cannot establish a prima facie case. *See Conley v. Village of Bedford Park,* 215 F.3d 703, 711–12 (7th Cir. 2000) (unsupported allegations that do not set forth "any specific times" when overtime was denied is "wholly inadequate to make out a prima facie case of discrimination"); *see also Bennett v Potter*, 2011 WL1231166 at *7 (N.D. Ill., March 30, 2011) (granting summary judgment because allegations of being denied overtime "four or five" times without providing specific dates is insufficient).

In *Conley,* the Seventh Circuit affirmed summary judgment, holding that unsupported, self-serving assertions by plaintiff about being denied overtime is insufficient to defeat a motion for summary judgment. *Id.,* 215 F.3d at 711-12. Similarly, in *Bennett,* the plaintiff's evidence was only that her manager "offers overtime to the same people repeatedly," and that "preferential treatment was given to males on a non-rotating basis." *Bennett,* 2011 WL1231166 *7. The district court granted summary judgment because Plaintiff did not "make a single specific allegation concerning the denial of overtime, *such as a date on which she requested overtime and was denied*," and despite claiming she was denied overtime "four or five" times, "she was unable to say specifically when that occurred." *Id* (emphases added).

Here, Rogers' claim suffers from the same deficiency. While Rogers believes that he was wrongfully denied overtime, he admitted that he cannot identify any specific dates when he was denied overtime to which he was entitled. [SOF 23-Tab 1, Rogers Dep. 56:18 to 57:2; SOF-35 Tab 1, Rogers Dep. 70:6-10] Similarly, although Rogers claims that during a two-week layoff,

some employees were called in to work, he could not say specifically when that was. [SOF 38-Tab 1, Rogers Dep. 77:14-17][2]

### ii. *Rogers has no evidence Ford denied him overtime because of his race*

Even if Rogers could identify specific instances in which he was wrongfully denied overtime (which he cannot), Rogers lacks sufficient evidence of any purported discriminatory motive, which caused his alleged failure to receive overtime. The undisputed evidence is that the failure to receive overtime could be the result of multiple factors. And, where multiple *other* reasons exist for overtime to be denied or not obtained, alleged discrimination may not be the reason that overtime was not obtained. *See Lord,* 839 F.3d at 563.

Rogers lacks sufficient evidence to establish Ford acted with a discriminatory motive for several reasons. First, Rogers admits he actually *declined* overtime opportunities from time-to-time. [SOF 42-Tab 1, Rogers Dep. 105:11-13] Second, Rogers cannot identify any instances in which his classification was needed on a weekend in order to make him eligible for such overtime. [SOF 27-Tab 2, Grzych Dep. 30:9 to 31:4; *see also* SOF 35] Third, Rogers admitted that weekday overtime arose when trucks arrived late or during lunch, and overtime was offered first to the primary operator responsible for unloading a truck. [SOF 20-22—Tab 1, Rogers Dep. 55:10-56:17] Clearly, the delayed arrival of a truck has nothing to do with race. Fourth, Rogers could not identify any white employees who were given overtime when African-American employees were being denied it. [SOF 43-Tab 1, Rogers Dep. 136:14-17] Finally, Rogers never filed a grievance with the Union concerning his allegations of being denied overtime. [SOF 40-Tab 1, Rogers Dep.82:9-12; SOF 45-Tab 1, Rogers Dep. 61:23 to 62:8, and 82:9-12] Although Rogers allegedly spoke to Union personnel about the allocation of weekend overtime, he claims

---

[2] Like the plaintiff in *Bennett*, *supra*, Rogers believed Ford managers played favorites with a "whole little crew." [SOF 39-Tab 1, Rogers Dep. 79:3-15]

6

the Union did nothing about it. [SOF 33-Tab 1, Rogers Dep. 61:23 to 62:8; SOF 37-Tab 1, Rogers Dep. 72:5-15] Thus, Rogers' race discrimination claims must fail.

    B.  **Rogers Cannot Establish a Prima Facie Case of Retaliation**

In the FAC, Rogers claims Ford retaliated against him because of the EEOC Charge of former co-Plaintiff, Carline Dunlap (Doc. 27-1 [Ex. A to FAC]; Doc. #27 ¶¶ 19-20), by: "watching him" more closely, giving him more trucks to unload, being mad at him, and leaving a rope in the form of a "noose" on stock at work. *Id.* ¶ 20. To establish retaliation, Rogers must satisfy three elements: (1) he engaged in a protected activity under Title VII;[3] (2) he suffered an adverse employment action; and (3) there is a causal link between their protected activity and the adverse action. *Coleman v. Donahoe,* 667 F.3d 835, 859 (7th Cir. 2012).[4] Rogers cannot establish a prima facie retaliation claim.

Regarding element (2) of retaliation, Rogers must show an adverse employment action. However, "Federal law protects an employee only from retaliation that produces an injury, and, therefore, an employer's retaliatory conduct is actionable only if it would be materially adverse to a reasonable employee." *Stephens v. Erickson,* 569 F.3d 779, 790 (7th Cir. 2009), citing *Burlington N. Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68–69, 126 S. Ct. 2405 (2006). Title VII does not protect an employee from "trivial harms, petty slights, nor minor annoyances." *Stephens,* 569 F.3d at 790 *see also Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996)("[N]ot everything that makes an employee unhappy is an actionable adverse action."). Instead, "conduct is 'materially adverse' if it would have 'dissuaded a reasonable worker from

---

[3] Rogers never filed his own EEOC charge nor provided any documents to the EEOC to support his claims, and instead filed a charge with the CCHR. [SOF 49-Tab 1, Rogers Dep. 95:7-24; Tab 1B, Rogers Dep. Ex. 9; SOF 50-Tab 1, Rogers Dep. 143:24 to 144:15, 145:2-8, 146:21 to 147:3]

[4] Rogers purported hostile environment claim is that Ford allowed such hostile environment in retaliation for Dunlap's EEOC Charge. (Doc. 27-1; Doc. 27, p.3, ¶20) Regardless of how this claim is framed, Rogers must still prove the elements of retaliation to survive summary judgment.

making or supporting a charge of discrimination.'" *Id., quoting Burlington Northern*, 548 U.S. at 68, 126 S. Ct. 2405.

For example, in *Brown v. Advocate South Suburban Hospital,* 700 F.3d 1101 (7th Cir. 2012) the Seventh Circuit found "'personality conflicts at work that generate antipathy' and 'snubbing by supervisors and co-workers' are not actionable" under Title VII. *Id.* at 1107, quoting *Burlington Northern*, 548 U.S. at 68, 126 S. Ct. 2405. There, the Court affirmed summary judgment on two African-American nurses' retaliation claims holding, "we do not think that being called a trouble maker, a cry baby, or a spoiled child would dissuade a reasonable person from complaining of discrimination." *Id.* at 1108.

Separately, regarding element (3) of this cause of action, Rogers must also prove retaliatory causation. Rogers "must produce evidence that a retaliatory motive actually influenced the decision-maker, not merely that it could have…" *Brown*, 700 F.3d at 1108; *see also*, *Collins v. American Red Cross*, 715 F.3d 994, 999 (7th Cir. 2013) ("Collins has provided evidence showing, at most, that the report's conclusions were wrong. But she has not provided anything—apart from mere speculation—that the report's conclusions were wrong *because of Collins's EEOC complaint*.") (emphasis original). Moreover, the law is settled that an employer is not required to prevent subsequent acts to avoid liability. *See Vance v. Ball State University,* 646 F.3d 461, 473 (7th Cir. 2011) ("Title VII does not require an employer's response to 'successfully prevent subsequent harassment.'") quoting *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 954 (7th Cir. 2005).

Here, Rogers makes three allegations concerning Ford's alleged retaliation: (i) white employees were unhappy because he brought attention to alleged overtime claims [SOF 51-Tab 1, Rogers Dep. 152:12-21]; (ii) Ford gave Rogers more trucks to unload and the supervisors

8

watched him more closely with their arms crossed [SOF 52-Tab 1, Rogers Dep. 158:3-20]; and (iii) an alleged "noose" was placed in his work area. [SOF 58-Tab 1, Rogers Dep. 120:24-121:11] Rogers must show an adverse employment action and retaliatory motive, in connection these allegations. However, he cannot, and his retaliation claim fails as a matter of law.

As to his allegation that white employees were upset with him, Rogers cannot identify by name any such employees upset about his CCHR charge. [SOF 57-Tab 1, Rogers Dep. 149:20 to 150:8] Similarly, there is no evidence a supervisor took any alleged action against Rogers, based on Rogers' CCHR Charge, or even understood any purported connection to Dunlap's EEOC Charge, at the relevant times. [SOF 56-Tab 1, Rogers Dep. 220:5-18] Further, Rogers admits Ford salaried personnel never disciplined him on such occasions. [SOF 19-Tab 1, Rogers Dep. 155:18 to 156:3; SOF 53-Tab 1, Rogers Dep. 155:18 to 156:3; 158:21 to 159:4; SOF 54-Tab 1, Rogers Dep. 159:10-23] Thus, Rogers can neither show an adverse employment action, nor retaliatory causation with respect to this allegation.

With respect to allegation (2) about unloading more trucks and having supervisors watch him, such alleged conduct does not constitute an adverse action, and Rogers offers no evidence of retaliatory animus in connection with it. To begin, Rogers concedes that this alleged activity occurred *before* he complained to Labor Relations about overtime issues or brought a CCHR charge. [SOF 47-Tab 1, Rogers Dep. 90:1-7; SOF 49-Tab 1, Rogers Dep. 95:7-24; Tab 1B, Rogers Dep. Ex. 9] Further, Rogers admits that Ford salaried personnel said nothing to him, while purportedly watching him. [SOF 53-Tab 1, Rogers Dep. 155:18 to 156:3; 158:21 to 159:4] And, if anything, Rogers' allegations reflect only perceived personality conflicts and not materially adverse conduct. *See, Stephens*, *supra,* 569 F.3d at 790 (being "stared and yelled at ... is not an actionable harm"); *see also, Dunn v. Washington Cnty*, 429 F.3d 689, 690-93 (7th Cir.

9

2005) (doctor's statements to a nurse, even in a "nasty and uncivil tone"—which is more than alleged here-- without other action did not cause actual injury). Furthermore, allegedly unloading more trucks or having supervisors watch him does not rise to the level of formal discipline, and Rogers conceded he never even received discipline or performance coaching from Ford.[5] [SOF 19-Tab 1, Rogers Dep. 155:18 to 156:3; SOF 53-Tab 1, Rogers Dep. 155:18 to 156:3; 158:21 to 159:4; SOF 54-Tab 1, Rogers Dep. 159:10-23] Thus, Rogers' allegation (2) of retaliation is without merit.

Finally, with respect to Rogers' allegation that an alleged noose was placed at his work area, such allegation also falls short. Rogers claims that after unloading a truck, he found a rope on an empty rack in his area that was in the shape of a noose. [SOF 58-Tab 1, Rogers Dep. 120:24-121:11] While it is unclear whether the rope was a "noose" in the first place --indeed, an African American supervisor about whom Rogers has no complaints did not perceive it as a noose [SOF 61-Tab 1, Rogers Dep. 124:24 to 125:19]--Rogers has offered no evidence about who placed the alleged noose in his work area or why. [SOF 59-Tab 1, Rogers Dep. 120:23-121:11; SOF 60-Tab 1, Rogers Dep. 123:7-13] Thus, in connection with the alleged noose, Rogers has no evidence that the alleged item was directed toward him or why the alleged item was placed there in the first place.[6] Accordingly, Rogers' retaliation claims must fail as a matter of law.

---

[5] Even if true, disputed performance reviews do not form an adverse employment action. *Volovsek v. Wis. Dep't of Agric. Trade and Consumer Prot.,* 344 F.3d 680, 688 (7th Cir. 2003) ("disputed performance reviews ... do not, themselves, amount to the kind of adverse employment action that constitutes discrimination or retaliation").

[6] Consistent with the lack of retaliatory animus, the evidence is that Ford acted reasonably in response to the alleged noose. [SOF 64-Tab 4, Decl. Christina Peace, ¶3, and attachment; Tab 5, Dahringer Dep. 40:10 to 42:13] And, Rogers admits when he reported the rope to Ford's Labor Relations representative, Natalie Dahringer, she took the allegation seriously and was upset by it. [SOF 63-Tab 1, Rogers Dep. 131:24 to 132:16]

### III. CONCLUSION

Rogers' claims of discrimination and retaliation are without merit. Rogers cannot identify when any alleged denial of overtime occurred, much less that such denial was caused by his race. And, Rogers conceded that it was merely his "personal opinion" that Ford's alleged retaliatory acts were because of his complaint of discrimination. For all the foregoing reasons, summary judgment should be entered in favor of Defendant Ford and against Rogers on all claims.

Dated: September 5, 2017                    Respectfully submitted,

                                                      **BERKOWITZ OLIVER LLP**

By: /s/ Jocelyn A. Villanueva
    Kathleen M. Nemechek    ARDC #50139
    Jocelyn A. Villanueva    *Admitted Pro Hac Vice*
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone:  (816) 561-7007
    Facsimile:  (816) 561-1888
    E-Mail:  knemechek@berkowitzoliver.com
             jvillanueva@berkowitzoliver.com

    Mark H. Boyle    ARDC #6200934
    Karen Kies DeGrand    ARDC #6191140
    Donohue Brown Mathewson & Smyth LLC
    140 South Dearborn Street, Suite 800
    Chicago, Illinois 60603
    Telephone:  (312) 422-0900
    Facsimile:  (312) 422-0909
    E-Mail:  karen.degrand@dbmslaw.com
             mark.boyle@dbmslaw.com

*Attorneys for Defendant Ford Motor Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2017, the foregoing was filed with the Court using the ECF system, which provided electronic service to the following:

Demitrus T. Evans
10330 W. Roosevelt Road, #204
Westchester, Illinois, 60154
Main: (708) 531-1740

*Attorney for Plaintiff Rogers*

/s/ Jocelyn A. Villanueva
***Attorney for Defendant Ford Motor Co.***