**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID ROGERS, et al. | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 1:12-cv-07220 |
| | ) | |
| FORD MOTOR COMPANY, | ) | JUDGE GOTTSCHALL |
| | ) | |
| Defendant. | ) | MAGISTRATE WEISMAN |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANT FORD MOTOR COMPANY'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to F.R.C.P. 56 and L.R. 56.1, Defendant Ford Motor Company ("Ford") submits this Reply Brief in Support of its Motion for Summary Judgment (the "Motion," Doc. 213) on the claims asserted by Plaintiff David Rogers ("Plaintiff" or "Rogers") in the First Amended Complaint ("FAC").

## I. INTRODUCTION

As described in Ford's opening brief (Doc. 214), Plaintiff is an hourly employee at Ford's Chicago Assembly Plant (the "Plant" or "CAP") and asserts: (i) race discrimination from alleged denials of overtime; and (ii) retaliation. In his Opposition (Doc. 221), and apparently recognizing the weakness of his claims, Plaintiff attempts to change facts he swore to during discovery to create a sham issue. However, Plaintiff cannot flip a switch and undo his previous sworn responses, and Ford's Motion should be granted.

In summary, Rogers' race/overtime claims fail because: (i) he cannot avoid his admissions during discovery by changing his story now; (ii) even if the Court were to consider

Plaintiff's "new" evidence, it is not enough because Plaintiff fails to sufficiently detail instances of alleged overtime denial; and (iii) Plaintiff cannot prove racial animus in any event. Next, Rogers' retaliation claim fails because: (i) his admissions during discovery preclude his "noose" allegation from qualifying as retaliation; (ii) his other claims regarding alleged increased scrutiny and being asked to unload more trucks do not qualify as adverse actions; and (iii) he cannot offer proof of retaliatory animus.

## II. LEGAL ARGUMENT

### A. PLAINTIFF'S RACE CLAIMS FAIL AS A MATTER OF LAW

To establish a prima facie case on his race claims, Plaintiff must show: (i) he is a member of a protected class;[1] (ii) the wrongful denial of overtime (the adverse action); and (iii) racial animus in such action. *See Lord v. High Voltage Software, Inc*., 839 F.3d 556, 563 (7th Cir. 2016)(noting ultimate question is whether adverse action was caused by discriminatory or retaliatory animus); *Liu v. Cook County*, 817 F.3d 307, 316 (7th Cir. 2016)(fundamental question is whether there was prohibited discrimination).[2] Plaintiff appears to agree generally to this legal framework. (Doc. 221 at 7, pg ID 1029)

With respect to the alleged adverse action, Plaintiff must offer specific evidence. That is, Plaintiff must set forth *specific times* when overtime was wrongfully denied. *See Conley v. Village of Bedford Park,* 215 F.3d 703, 711-12 (7th Cir. 2000) (unsupported allegations that do not set forth "any specific times" when overtime was denied fails to make out a prima facie case of discrimination). Here, however, Plaintiff admitted during discovery that he could not identify specific dates that he was denied overtime to which he was entitled. (Doc. 215 at para. 23, 35;

---

[1] Ford agrees that Plaintiff is a member of a protected class based on race.

[2] As stated in its opening brief, to the extent Plaintiff is able to make a prima facie case (which he cannot), the next steps for proof are: (i) legitimate non-discriminatory reasons and (ii) pretext. (Doc. 214 at 4, pg ID 708)

pg ID 720-21)  Now, more than five years after the inception of this case, more than three years after the close of fact discovery, and more than two years after obtaining new counsel, Plaintiff wants to change his story.

<strong>i.    Plaintiff Cannot Create a Sham Issue of Fact with "New" Information</strong>

While Plaintiff could not offer any specific dates about overtime denials at deposition or in interrogatory answers, Plaintiff now attempts to defeat summary judgment by issuing his own Affidavit and notes.  (Doc. 221-10, 221-06)  Through such documents, Plaintiff purports to dispute paragraphs 23 and 35 from Ford's Statement of Undisputed Material Facts ("SOF," Doc. 215).  Yet, Paragraphs 23 and 35 from Ford's SOF cite Plaintiff's *own sworn testimony*, reflecting Plaintiff's inability to identify specific dates in which he was denied overtime:

> Q.    And do you believe that there were weekday overtime opportunities that you should have had that you did not receive?
>
> A.    Weekday or weekend?
>
> Q.    Weekday, let's start with.
>
> A.    Week -- yes.
>
> Q.    Can you tell me when those occasions occurred?
>
> A.    *I don't have specific dates.*
>
> [further testimony]
>
> Q.    Can you provide me with any specific dates that you believe you should have been called in to work overtime on a weekend but were not?
>
> A.    *I don't have any specific dates.*

Ford App. Tab 1, Rogers Dep 56:18 to 57:2, 70:6-10 (Doc. 215-2)(emphasis added).

Although Plaintiff now tries to avoid his previous sworn testimony, courts have long recognized the rule that a party cannot avoid summary judgment by creating sham factual issues by taking back or contradicting damaging concessions.  *See Truly v. Sheahan*, 135 F. App'x 869,

870-871 (7th Cir. 2005) (party cannot contradict earlier sworn testimony with sham affidavits); *see also Commercial Underwriters Ins. Co. v. Aires Envir. Servs. LTD,* 259 F.3d 792, 799 (7th Cir. 2001). The Court should decline to consider Plaintiff's "new" answers on overtime on this legal basis alone, and end its analysis here.

Moreover, Plaintiff's claimed reason for now submitting and relying upon an affidavit is illegitimate. As an ostensible excuse for his deposition testimony, Plaintiff claims his previous lawyer failed to return his notes before the deposition. (Rogers Affidavit, Doc. 221-10 at para.48, 49, pg ID 1306). What Rogers failed to disclose, however, is that *he was shown his notes by Ford's counsel during the deposition. See, e.g.*, Rogers Dep. Ex 10 (Doc. 221-6, pg ID 1280). And, despite reviewing his notes, Rogers still could not provide any specifics to support his overtime claims. For example, when questioned from his notes, Rogers testified:

> Q:      This first entry on Deposition Exhibit No. 10 [Roger's Journal Entry Notes], page 2, says, "Bill is paying white guys to work during their breaks to move things to the IP line." Who was being paid?
>
> A:      *I don't remember who. I mean, I don't remember a specific person* at that time. Right now I don't….[interim lines omitted]…
>
> Q:      And, again, it [the notes] says that, "No blacks are getting overtime. We're still moving IP things over while waiting on truck. He is paying white guys to work during their breaks and work over." Again, can you tell me who the white employees were that you believe were working during breaks and working over?
>
> A:      *I don't – I don't remember who they were specifically*.

(Rogers Dep. 105:22-106:21; Doc. 215-2)(emphasis added). Rogers' testimony concerning the very notes he claims to have been denied shows the notes could not have helped him in any way.

Finally, Plaintiff's answer to Ford's Interrogatory 1 states: "Plaintiff does not know particular dates, times and locations as to specific denials of overtime, only that he began being denied equal opportunities of overtime in 2006/2007 and it lasted until at least the end of 2009 into the beginning of 2010." (Plaintiff's Answer to Interrogatory 1, attached as Reply Exhibit A

4

to Ford's Reply to Plaintiff's Response on Statement of Facts or "10/17/17 Reply on SOF," filed herewith.) Again, these were Plaintiff's *sworn* discovery responses. And, Plaintiff had all documents at his disposal, including his notes, in answering this Interrogatory. For all of these reasons, Plaintiff should not be allowed to rely on new factual allegations, which specifically contradict his prior sworn testimony.

> **ii.** **Even if the Court Were to Consider Plaintiff's "New" Evidence (Which It Should Not), Plaintiff Still Does Not Sufficiently Detail Instances of Being Wrongfully Denied Overtime**

Even if the Court were to consider Plaintiff's new answers (which it should not), such information does not remedy the fatal deficiency in his case - - because even the new information is *not* detailed enough. For example, Plaintiff's rambling notes merely reference events that took place "the week of" without ever offering more specific reference to actual days, or for that matter, the who, the what, or the where, all of which are essential to establishing his claims. (Doc. 221-6 at pg ID 1280) As set out in Ford's SOF, there are different procedures for allocating overtime, depending on whether it was weekday or weekend. (Ford SOF, para.'s 20, 21, 24, 25 (Doc. 215); Ford App. Tab 1, Rogers Dep. 55:10 to 56:11, 65:9 to 66:13 (Doc. 215-2); Ford App. Tab 2, Grzych Dep. 30:8-14, 31:5-13, 32:1-9 (Doc. 215-6)). Without specific dates, it cannot be determined which process should have applied, or who was eligible for overtime, under Ford's procedures.

Another example: where weekday overtime is claimed, that overtime should be allocated first to the "primary operator," and overtime availability further depends on multiple other factors, such as: which trucks were late; which dock those trucks came to; who was assigned to that dock; and who was present that day. (*See* Ford SOF, para.'s 10, 11, 21 (Doc. 215); Ford App. Tab 1, Rogers Dep. 46:9-21, 47:6-19, 48:10-18, 56:4-11; Doc. 215-2.) *See also* Ford's Opening Brief at 6 (Doc. 214). Thus, without details, such as dates and specific context, a

meaningful analysis becomes impracticable, and, as the Court recognized in *Bennett*, the broad generalities offered by Plaintiff cannot prove his claim. *Bennett*, *supra*, 2011 WL 1231166 at *7 (being denied overtime "four or five" times, without specific days identified, is insufficient).

Here, even with Plaintiff's notes, Plaintiff's references to "the week of" are insufficient because of the way overtime was allocated and the multiple factors that could impact overtime allocation, as discussed above. Without detailed information about the dates, times and surrounding circumstances, *even with* Plaintiff's newly offered, contradictory facts, Plaintiff has simply failed to present sufficient evidence to avoid summary judgment. *See id*.

### iii. Regardless of All of the Above, Plaintiff Cannot Prove Racial Animus.

Even if the Court were to find Plaintiff's new information sufficient,[3] Plaintiff still cannot show racial animus in the denial of overtime, a required element of his *prima facie* case. Again, the ultimate question remains: does the record contain sufficient evidence to permit a reasonable fact finder to conclude that a discriminatory or retaliatory motive caused the adverse action? *See Lord*, 839 F.3d at 563. Plaintiff's primary arguments on racial animus are based on: (a) equalization reports; (b) administrative determinations; and (c) an alleged comparable employee. Such arguments are without merit.

### a) Equalization Reports Do Not Prove Animus

Plaintiff must prove race discrimination caused him to be denied overtime. Plaintiff cites equalization reports as alleged proof.[4] More specifically, Plaintiff argues that one such report shows "prior week overtime" for white employee Ernst at 1.5 and 3.0 hours, while Plaintiff's prior week overtime was 0. (Doc. 221 at 8, pg ID 1030) In other words, Plaintiff cites such

---

[3] Further, the Court is not required to parse through the record, to find information to resolve issues for a dispositive motion. *See e.g. Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1001 (7th Cir. 2004) (judges are not like pigs searching for truffles in summary judgment records).

[4] Note such equalization reports are not official payroll records showing actual amounts paid, withholdings, deductions, etc.

report to claim another person had more overtime than Plaintiff did on two occasions. However, that another person may have had more overtime is *not* dispositive of whether *discrimination* has occurred. *Bennett*, 2011 WL1231166 at *8 (summary judgment granted even though plaintiff female had less overtime than male). *See also Vance v. Ball State University*, 646 F.3d 461, 475 (7th Cir. 2011)(that a male had more overtime than a female did not prove wrongful causation).

Indeed, one person may be treated differently than another for many reasons, *other* than race. Persons may be treated differently for legitimate reasons, or even for unfair or wrong reasons, *absent* discrimination. *See Liu*, 817 F.3d at 317 (plaintiff "does not explain how [defendant's] earlier admonitions, even if we presume they were unfair, call into question the legitimacy of defendants' concern"); *Collins v. Red Cross*, 715 F.3d 994, 1001 (7th Cir. 2013)(evidence that employer came to wrong conclusion does not prove racial animus).

Further, that same equalization report cited by Plaintiff indicates that white employees were treated the same as Plaintiff. For example, white employee S. Perry had zero (0) prior week overtime hours, just like Plaintiff. (Doc. 221-23 at page ID 1392, 1394; Doc. 221-22 at pg ID 1389) Again, this is analogous to *Bennett*. There, even though a report indicated that one male employee, Pough, had more overtime than plaintiff (a female complaining of gender discrimination), the same report also indicated that plaintiff had more overtime than another male employee, Scala. *Bennett*, 2011 WL1231166 at *8. The court held that because another employee in the alleged "favored" group (male) was not treated any better than plaintiff (female), such undermined plaintiff's claim of discrimination. *Id*. The same is true here. Plaintiff may have received less overtime than a white employee, Ernst; however, another white employee Perry was treated no better than Plaintiff. (Doc. 221-23 at page ID 1392, 1394) Thus, like in *Bennett,* Plaintiff's attempt to show discriminatory animus with bald numbers lacks merit.

### b) CCHR and EEOC Determinations Are Not Probative

Plaintiff also points to CCHR and EEOC determinations (Doc. 221 at 6-7, pg ID 1028-1029), to prove Ford's discriminatory animus. There are two fundamental hurdles to Plaintiff's reliance upon these documents. First, both the CCHR and EEOC determinations are hearsay and inadmissible to prove the truth of the matter asserted, and thus Plaintiff cannot rely upon them as a matter of law. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) (inadmissible hearsay is not enough to preclude summary judgment*); Eisenstadt v. Centel Corp*., 113 F.3d 738, 742 (7th Cir. 1997) (hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial).

Second, even if they were admissible evidence, the CCHR and EEOC findings are not probative here, because they do *not* constitute legal adjudications of liability. Rather, they are administrative determinations, founded upon a different record and different required elements. *See, Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 933 (7th Cir. 2001)(Easterbrook concurring) ("Litigants often try to introduce agency dispositions in suits under Title VII, but courts have concluded that neither a finding by the EEOC that discrimination occurred, nor a finding of no discrimination, has legal consequences or would promote accurate decision making by juries. *Lang v. Kohl's Food Stores, Inc.,* 217 F.3d 919 (7th Cir. 2000), collects a few of these decisions.")  Thus, Plaintiff cannot rely upon either the CCHR nor EEOC determinations to defeat summary judgment.

### c) Alleged Comparable Not Similarly Situated

While a plaintiff may attempt to show racial animus by proving a similarly situated employee or "comparable," not in the protected class, was treated more favorably, Plaintiff's efforts to do so here are unavailaing. Here, Plaintiff claims Ernst received more overtime (Doc. 221 at 8, pg ID 1030), and that numeric difference does *not* prove discrimination, as stated

above.[5]   However, in addition, Plaintiff must show Ernst is similarly situated in all relevant respects, which Plaintiff cannot do.  *May v. Daimler Chrysler*, 2006 WL 6656531 at *2 (N.D. Ill. 2006)(granting summary judgment on race and retaliation claims).

A similarly situated employee is one "whose performance, qualifications, and conduct are directly comparable to the plaintiff's in "all *material* respects."  *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 274 (7th Cir. 2004)(emphasis added). *See also Coleman v. Donahoe,* 667 F.3d 835, 848–850 (7th Cir. 2012). Indeed, for purposes of overtime, Plaintiff has a difficult burden in proving an alleged comparable is "similarly situated," because overtime can depend on multiple factors.  *See Vance*, 646 F.3d at 475 (plaintiff failed to show alleged comparable was similarly situated for overtime because alleged comparable worked more regular hours and plaintiff left work early).

Here, Plaintiff's own testimony shows that Ernst is *not* similarly situated in all material respects.  First, Plaintiff admitted that Ernst worked on *different* docks, while Plaintiff worked on the LCL dock.  (Ford App. Tab 1, Rogers Dep. 60:3-20; Doc. 215-2.)  For overtime, then, Plaintiff and Ernst were exposed to different opportunities depending upon the timing of arrival of trucks to be unloaded, what specific commodities were involved, etc.  (*See* Ford SOF, para.'s 10, 11, 21 (Doc. 215); Ford App. Tab 1, Rogers Dep. 46:9-21, 47:6-19, 48:10-18, 56:4-11; Doc. 215-2.) Next, according to a report cited by Plaintiff, Ernst had *more seniority* than Plaintiff (Doc. 221-23 at pg ID 1392), and according to Plaintiff, overtime was supposed to be allocated based on seniority or equalization.  Ford App. Tab 1, Rogers Dep. 87:14-19 (Doc. 215-2).

---

[5] In his deposition, Plaintiff also mentioned Jack Stricklin and Jeremy [LNU] as potential comparables. Doc. 215-2 at 59:13-23.  However, he could not fully identify Jeremy, and Stricklin is not an ILTO, but a different classification than Plaintiff, rendering him not similarly situated (among other reasons).  *See* Doc. 221-22 at pg ID 1389-90 (showing cumulative list of ILTO's, and NOT listing Stricklin). Regardless, Plaintiff does not discuss Stricklin or Jeremy in his response brief.  (Doc. 221)

Even aside from seniority or dock assignment, there are multiple other factors which could impact whether an employee could be "similarly situated" for purposes of overtime, including the classification of the employee, the production needs of the department, the timing of deliveries, the training of the employee with a given commodity, whether the employee refused overtime before, or whether the employee was present/absent.[6]  *See* Ford's Answer to Interrogatory 3 (Doc. 215-7 at 6, pg ID 977).  In this context, Plaintiff has not offered sufficient evidence to show Ernst was "similarly situated" for purposes of a specific overtime opportunity. *Vance*, 646 F.3d at 475 (affirming summary judgment, finding "even if [plaintiff] had seniority over [comparable]…they did not work a comparable number of regular hours.")  Thus, for yet another reason, Plaintiff's race claim fails as a matter of law.[7]

### B.     PLAINTIFF'S RETALIATION CLAIMS LACK MERIT

To establish retaliation, Rogers must satisfy three elements: (1) he engaged in a protected activity under Title VII; (2) he suffered an adverse employment action; and (3) there is a causal link between their protected activity and the adverse action. *Coleman, supra,* 667 F.3d at 859. Assuming Plaintiff's CCHR charge constituted a protected activity, Plaintiff must establish the alleged adverse action and retaliatory causation. With respect to alleged adverse actions, Plaintiff claims that: (i) an alleged noose was placed in his work area; (ii) supervisors stared at him and

---

[6] Plaintiff's notes show he refused overtime at times.  (Doc. 221-06, pg ID 1282).  And, an employee could be absent for any number of reasons - - here, Plaintiff admitted he would sometimes leave the Plant early after finishing his trucks.  Ford App. Tab 1, Rogers Dep. 105:2-10 (Doc. 215-2).

[7] Overall, Plaintiff's alleged evidence of racial animus fails because: it contradicts Plaintiff's sworn testimony; is unsupported; is not probative; lacks specificity; lacks connection to a particular overtime denial; or some or all of the above.  (Doc. 221 at 4-7, pg ID 1026-29)  For example, Plaintiff claims Bill Rentschler told another supervisor "Don't forget to pull the black one off."  (Doc. 221 at 6, pg ID 1028)  Yet, Plaintiff testified in his deposition that Rentschler made *no* racially offensive comments to him. (Rogers Dep. 137:16-21; Doc. 215-2)  Stray remarks do not prove racial animus (*see Merillat v. Metal Spinners, Inc*., 470 F.3d 685, 694 (7th Cir. 2006)), and Plaintiff did not know the context of the alleged comment by Rentschler in any event.  Ford App. Tab 1, Rogers Dep. 140:7-21 (Doc. 215-2).

asked him to do more work.  (Doc. 221 at 12, 15, pg ID 1034, 1037)  Neither of these claims are actionable as a matter of law.

### i.     Plaintiff's Claim About an Alleged Noose Fails As A Matter of Law

Plaintiff spends a number of pages in his brief arguing that the item he found was, in fact, a noose.  (Doc. 221 at pg ID 1036-37)  While the record is in dispute about whether the item was a "noose," even if it were, Roger's claim still fails as a matter of law. Critically, Rogers has no evidence about who placed the alleged item in his work area or why, and accordingly, he cannot establish the alleged perpetrator had knowledge of his alleged protected activity or acted on that basis. (SOF 59-Tab 1, Rogers Dep. 120:23-121:11; SOF 60-Tab 1, Rogers Dep. 123:7-13) Indeed, when asked at his deposition about the alleged noose, Plaintiff admitted:

Q.     And do you know how the rope got on the rack?

A.     I *don't have a clue, not one clue how it got there*.

Ford's App. Tab 1, Rogers Dep. 121: 8-11 (Doc. 215-2)(emphasis added).

Ford cited such admission in its Statement of Undisputed Facts (Doc. 215, para. 59), and, Plaintiff did *not* dispute such fact.[8]  (Doc. 222, para. 59)  Thus, Plaintiff cannot show any causal connection between the alleged noose and his alleged protected activity. Plaintiff's noose allegation does not make his retaliation claim.

### ii.     Rogers' Other Alleged Retaliatory Acts Are also Without Merit

To begin, Plaintiff attempts to bolster his retaliation claims with testimony by former Plaintiff Althea Demps ("Demps").  Citing to Demps' testimony, Plaintiff claims he was stared at and scrutinized by supervisors, and that supervisors would yell at him to get work done.  (Doc. 221 at 15, page ID 1037)  However, Demps' testimony does not help Plaintiff for at least two

---

[8] The fact that the alleged noose was found after Plaintiff's CCHR charge is *not* enough to prove retaliatory animus.  *See, e.g.*, *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("The mere fact that one event preceded another does nothing to prove that the first event caused the second.").

reasons: (1) Demps testified about *her* experience, not Plaintiff's; and (2) Demps' testimony also lacks foundation (vis-à-vis Plaintiff) because she changed to a different classification from Plaintiff and moved to the Sequencing Center, a different building than the Plant, in 2009. (Demps Dep. 22:5 to 23:6, attached as Reply Exhibit B to Ford's 10/17/17 Reply on SOF, filed herewith.)  Even if the Court were to consider Demps' testimony (which it should not), the claims presented do not qualify as retaliation.

<blockquote>a.      staring and scrutiny</blockquote>

First, such alleged staring and increased scrutiny are not adverse employment actions. Title VII simply does not protect an employee from "trivial harms, petty slights, nor minor annoyances." *Stephens v. Erickson,* 569 F.3d 779, 790 (7th Cir. 2009).  "'Personality conflicts at work that generate antipathy' and 'snubbing by supervisors and co-workers' are not actionable" under Title VII. *Brown v. Advocate South Suburban Hospital,* 700 F.3d 1101, 1107 (7th Cir. 2012).  Indeed, in *Griffin v. CHA*, this Court determined that "[plaintiff's] claims of being more closely monitored…do not qualify" as adverse employment actions and granted summary judgment on the retaliation claims.  *Griffin v. CHA*, 2016 WL 6091390 at *5 (N.D. Ill. 2016).

Second, Plaintiff admitted that supervisors were "watching him" even before his complaint of discrimination. Ford App. Tab 1, Rogers Dep. 90:1-20 (Doc. 215-2). Thus, Plaintiff cannot prove retaliatory animus.  *See Long v. Teacher's Retirement System of Illinios*, 585 F.3d 344, 354 (7th Cir. 2009)(actions occurring before and after the alleged protected activity destroy the ability to create an inference of retaliatory intent).

<blockquote>b.      asked to unload more trucks</blockquote>

Next, Plaintiff claims he was asked to unload more trucks.  However, Plaintiff cites only Demps' testimony on this. (Doc. 221-15)  Such testimony lacks nexus to qualify as an act toward

Plaintiff. *See supra* at 12. Further, Plaintiff's presentation of Demps' testimony is also misleading because Demps was not being asked to work during a scheduled break, in being asked to unload more trucks. Rather, she was asked to do more work when supervisors would see her sitting:

> Q. Making you work outside of your job assignment, what happened with regard to that?
>
> **A. [Demps testimony:] It -- it seemed like every time they would see me sitting, come and do this, come and get this from LCL dock and take it somewhere else. You know, that, that wasn't my job, but, of course, I can't say no. I can't refuse any work that's not -- that's there or they can write me up for that so. . . .**

(Demps Dep. at 107:3-19, attached as Reply Exhibit B to Ford's 10/17/17 Reply to SOF, filed herewith.) As described by Demps' testimony above, she was being asked to do more work, when she was seen sitting down, which is *not* an adverse employment action. Indeed, as Demps stated, she could be written up (i.e., disciplined) for refusing such work. Even Rogers conceded that such extra work was not "discipline" because he readily admitted he was never disciplined by Ford supervisors. (SOF 19-Ford App. Tab 1, Rogers Dep. 155:18 to 156:3 (Doc. 215-2)) Thus, being asked to unload more trucks was a legitimate request that cannot be construed as an adverse action. *See Vance*, 646 F.3d at 475 (even though plaintiff did not like it, employer's legitimate action in giving verbal warning to plaintiff did not qualify as an adverse action).

### c. still no proof of retaliatory causation

Even if the Court were to consider the above actions as adverse (which is denied), Plaintiff *still cannot prove retaliatory animus* behind such alleged actions. Indeed, Plaintiff admitted it was only his personal opinion that Ford's alleged retaliatory acts resulted from his complaint of discrimination:

> Q. For those instances and events that you have identified here today as retaliation, being given what you termed to be extra work, people

observing you or watching you while you worked, did anybody ever tell you that those things were being done because you had filed a complaint of discrimination?

A.   No, didn't nobody tell me that.

Q.   Do you have any specific facts or information that support your claim that these acts of retaliation were because you filed a complaint of discrimination?

A.   It was my -- *it's my personal opinion* and more of the actions that were shown.

Ford App. Tab 1, Rogers Dep. 220:5-18 (Doc. 215-2)(emphasis added).

Ford cited this admission in its Statement of Undisputed Facts (Doc. 215, para. 56), and Plaintiff did *not* dispute it. (Doc. 222, para. 56) Thus, Plaintiff cannot prove retaliatory animus, and his retaliation claims must fail as a matter of law.

### Conclusion

For the foregoing reasons and those stated in Ford's opening brief, the Court should grant summary judgment in favor of Defendant, and further relief as the Court deems appropriate.

Dated: October 17, 2017                Respectfully submitted,

                                       **BERKOWITZ OLIVER LLP**

                                       By: /s/ Jocelyn A. Villanueva
                                           Kathleen M. Nemechek          ARDC #50139
                                           Jocelyn A. Villanueva     *Admitted Pro Hac Vice*
                                           2600 Grand Boulevard, Suite 1200
                                           Kansas City, Missouri 64108
                                           Telephone:  (816) 561-7007
                                           Facsimile:  (816) 561-1888
                                           E-Mail:     knemechek@berkowitzoliver.com
                                                       jvillanueva@berkowitzoliver.com

14

Mark H. Boyle          ARDC #6200934
Karen Kies DeGrand    ARDC #6191140
Donohue Brown Mathewson & Smyth LLC
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603
Telephone:  (312) 422-0900
Facsimile:   (312) 422-0909
E-Mail:      karen.degrand@dbmslaw.com
                mark.boyle@dbmslaw.com

***Attorneys for Defendant Ford Motor Company***

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2017, the foregoing was filed with the Court using the ECF system, which provided electronic service to the following:

Demitrus T. Evans
10330 W. Roosevelt Road, #204
Westchester, Illinois, 60154
Main: (708) 531-1740

*Attorney for Plaintiffs*

/s/ Jocelyn A. Villanueva
***Attorney for Defendant Ford Motor Company***